*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1187**

State of Minnesota,
Respondent,

vs.

Otis Ray Mays,
Appellant.

**Filed April 6, 2015
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27CR1140555

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief State Appellate Public Defender, Davi E. Axelson, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Cleary, Chief Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**STAUBER**, Judge

In a postconviction appeal challenging his convictions of attempted second-degree burglary and possession of burglary tools, appellant argues that (1) the district court abused its discretion by admitting police officer testimony that appellant was apprehended while he "was attempting to burglarize [a] home"; (2) appellant's trial counsel was ineffective for failing to move to suppress warrantless evidence obtained from an initial search of appellant's cellphone; and (3) the district court abused its discretion by refusing to exclude evidence of the contents of appellant's cellphone that was obtained after issuance of a search warrant. We affirm.

**FACTS**

At about 9:00 a.m. on the morning of November 8, 2011, K.S. was looking out of her kitchen window in Robbinsdale when she "saw a person in my next door neighbor's back yard looking in the window, fidgeting around the window." K.S. thought the conduct looked "very suspicious," so she verified that the neighbor was not expecting anyone and then called 911. The person disappeared for about five minutes but then reappeared at a house two down from K.S.'s, and she saw the person again "fidgeting around" at the window of that house. K.S. had no doubt that it was the same person. As K.S. saw the person attempt to climb onto the upper deck of the second neighbor's house, she again called 911. Police arrived during the 911 call, and K.S. directed them to the proper house and saw them arrest the person she had been watching throughout the incident. K.S. observed no other persons in the area.

2

Robbinsdale Police officers Jon Gates and Robert Kaehn responded to the 911 call. When Gates came upon appellant Otis Ray Mays in the back yard, appellant was standing at the ground level of the home, "right next to [the window,]" with a "wide stance," and "a crowbar in his hands" that was "right up against the window" as if he "was about to pry the window open." When Gates searched appellant, he found a hammer and flat Drywall tool/knife in his backpack and latex gloves in appellant's back pocket. Appellant was also wearing a pair of gloves when he was apprehended.

At appellant's trial on charges of attempted second-degree burglary and possession of burglary tools, Gates testified that the crowbar, knife, and hammer could be used to commit burglaries. When the prosecutor asked him, "[W]hat was [appellant] doing when you caught him?," Gates replied, "I feel that he was attempting to burglarize the home." Defense counsel's objection was overruled. Gates was also allowed to testify over an objection that appellant had some texts on his cellphone, one of which indicated that at a nearby address the front door of the house was open. After appellant's arrest, Gates went to that address and verified that the front door of the house was open.

Police obtained a warrant to search the contents of appellant's cellphone. According to Investigator Steven Cole, the cellphone contents included a series of incriminating

> [t]ext messages that appeared to be sent by [appellant] to himself. They . . . included residences in Robbinsdale and notes like indicating if there was an open door, cars in the driveway. There were mentions of big screen TVs, Wiis, things that would be of interest to someone that was a burglar.

3

A transcription of some of the text messages was received into evidence at trial. Referring to a burglary, one of appellant's text messages said, "I got a lick right now super sweet."

Two witnesses gave alibi testimony for appellant. They stated that they were forced into participating in burglaries by a third person and that appellant became aware of what was happening, showed up at the scene before police arrived, and told the others to leave. A minister and two police officers also testified to appellant's good moral character. Appellant did not testify.

The jury found appellant guilty of both charged offenses. The district court stayed imposition of sentence, placed appellant on probation for three years, and ordered him to serve 90 days in the workhouse. Appellant's direct appeal was stayed to permit him to seek postconviction relief.

At a postconviction evidentiary hearing, appellant's trial counsel testified that at the time of trial she was unaware of *State v. Barajas*, 817 N.W.2d 204 (Minn. App. 2012), *review denied* (Minn. Oct. 16, 2012), which makes the contents of cellphones subject to Fourth Amendment privacy protections. Trial counsel decided not to challenge the initial search of appellant's cellphone because the parties were engaged in plea negotiations, the prosecutor had agreed to reduce the burglary charges to a gross misdemeanor level, and counsel "didn't think that even if the phone records were suppressed that that would be dispositive in the case." According to the police report, which was offered postconviction, appellant's phone rang repeatedly when Officers Gates and Kahn were conducting an inventory of appellant's property post-arrest.

4

Officer Kaehn "unlocked the screen of the cell phone to shut it off [and] observe[d] a text message which [appellant] had sent to himself." The message included a "long list" of Robbinsdale addresses and, in some cases, whether vehicles were parked in the driveways, and in one case, that there was an "open door" at the address.

The district court denied appellant's postconviction petition, ruling that trial counsel's failure to challenge the validity of the initial search of the cellphone was a tactical decision, and that even if trial counsel had brought a motion to suppress the cellphone evidence, it was not reasonably likely to have been successful because, unlike in *Barajas*, the evidence obtained from appellant's cellphone was in plain view and did not involve "key strokes made by Kaehn to navigate the cell phone's digital contents and thus no violation of the Fourth Amendment [occurred]."

This appeal followed.

## D E C I S I O N

### I.    Evidentiary Ruling on Police Testimony

Appellant challenges the district court's decision to admit Officer Gates' testimony that when he came upon appellant, he believed that appellant "was attempting to burglarize the home." In an appeal challenging an evidentiary ruling, this court will reverse only for a clear abuse of discretion. *Bernhardt v. State*, 684 N.W.2d 465, 474 (Minn. 2004). "A defendant claiming he is entitled to a new trial because the district court abused its discretion in admitting evidence over his objection must show both an error and prejudice resulting from the error." *State v. Hohenwald*, 815 N.W.2d 823, 835 (Minn. 2012). If the evidentiary error is not a constitutional violation, the "defendant

must show that the error substantially influenced the verdict in order to obtain a reversal."

*Id.*

Officer Gates' testimony encompassed a legal conclusion to be decided by the jury—whether appellant's conduct constituted an attempt to commit burglary. *See State v. Vang*, 774 N.W.2d 566, 578-79 (Minn. 2009) (ruling police officer testimony that defendant's activities constituted a "pattern of criminal behavior" was an expression of a legal opinion and "invaded the province of the jury"); *State v. Valtierra*, 718 N.W.2d 425, 434-35 (Minn. 2006) (prohibiting admission of testimony about a legal conclusion or about mixed questions of law and fact). The district court abused its discretion by admitting this evidence. However, the evidence of appellant's guilt was very strong. Appellant was apprehended by police while carrying burglary tools and attempting to break into a house, and an eyewitness testified that she had watched him attempt to forcibly enter two of her neighbor's homes. Under these circumstances, the officer's improper testimony that appellant's conduct amounted to attempted burglary could not have substantially convinced the jury to convict.

## II.    Ineffective Assistance of Trial Counsel

Appellant next claims ineffective assistance of trial counsel due to counsel's failure to object to incriminating warrantless evidence obtained from appellant's cellphone at the time of his arrest. To be successful in this claim, appellant needed to show that his attorney's representation "fell below an objective standard of reasonableness" and that but for the attorney's conduct, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064,

2068 (1984); *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (adopting *Strickland* standard). "When a defendant initially files a direct appeal and then moves for a stay to pursue postconviction relief, we review the postconviction court's decisions using the same standard that we apply on direct appeal." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012). This court reviews ineffective-assistance-of-counsel claims de novo. *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn. 2004).

As to the first *Strickland* prong pertaining to the quality of trial counsel's performance, an attorney is required to know the current law, and here, counsel did not. We therefore cannot conclude that the attorney's failure to object to admission of the cellphone evidence was grounded in trial strategy. But it is also unclear under the facts of this case whether the cellphone evidence would be inadmissible under *Barajas*. *Barajas* holds that a defendant has a constitutional reasonable expectation of privacy in cellphone contents that are concealed from the plain view of police by a cellphone's internal memory. 817 N.W.2d at 213-14. The facts here suggest that some of the information initially obtained by police was in plain view, at least within the parameters discussed in *Barajas*. *Barajas* identifies differing expectations of privacy for cellphone contents that are not made public and can only be accessed by "deliberate[ly] [making] key strikes and [requiring] navigat[ion] [of] the cellular telephone's digital contents" and cellphone contents that are "expose[d] . . . to the public or the police." *Id.* at 214. Respondent argues that the text message discovered by police does not fall within the privacy protections because appellant's cellphone was unlocked by police only for the purpose of turning off the cellphone, and during that time a single message flashed on the

7

screen. But the quantity of evidence obtained by police during this process, including a significant list of residential addresses, suggests that some additional "navigation" on the cellphone occurred. The quantity of evidence obtained suggests a search beyond what would be in the officers' plain view on a small cellphone screen.

However, while we are troubled that police likely exceeded the scope of a plain-view search, we need not reach the admissibility of the cellphone evidence because, even without that evidence, other admissible evidence firmly supports a conviction for purposes of the second *Strickland* prong. *See State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003) (stating that a reviewing court need not address both *Strickland* prongs if one is dispositive). Again, police apprehended appellant as he was using a crowbar to attempt to gain entry to a residence. He had been seen by a neighbor doing the same activity at that house and another house. And, there was no question as to his identity. When apprehended, appellant had burglary tools and latex gloves on his person. The neighbor saw no others about in the neighborhood. On these facts, there is no showing that the result would have been different without the claimed ineffective representation of appellant's trial attorney.

### III. Evidentiary Ruling on Contents of Cellphone

Appellant also argues that the district court abused its discretion by admitting evidence of his other bad acts or crimes that were established by the contents of his cellphone; this evidence was obtained after police executed a valid search warrant. At trial, appellant's counsel objected to Officer Gates' testimony about what his partner, Kaehn, had initially seen on the text messages, arguing that the evidence was hearsay,

8

irrelevant, and "uncharged *Spreigl*."[1]  The district court permitted Gates to testify about seeing the initial text message that identified other houses in the neighborhood that appellant had apparently cased, including one house in which the door was open, ruling that the evidence was relevant to show the state's theory of the case: that appellant was casing residences in Robbinsdale to commit burglaries.  The district court did not address whether the evidence was inadmissible evidence of appellant's other bad acts.  When the state later sought to introduce the contents of appellant's cellphone, defense counsel did not object.

Whether the evidence is subject to the plain-error rule because appellant failed to object to its admission or to the harmless-error rule because appellant's earlier objection was sufficient to constitute a *Spreigl* objection, the district court did not abuse its discretion by admitting the evidence.  *See State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006) (applying abuse-of-discretion standard of review to other-crimes evidence).  Generally, evidence of other bad acts is inadmissible under Minn. R. Evid. 404(b)  *Id.* (stating that evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith).  But "[i]mmediate-episode evidence is a narrow exception to the general character evidence rule."  *State v. Riddley*, 776 N.W.2d 419, 425 (Minn. 2009).  Under this exception, the state may offer "any evidence which is otherwise relevant upon the issue of the defendant's guilt of the crime with which he was charged," including all relevant

---

[1] *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965), sets forth parameters for admissibility of other crimes or "bad acts" evidence.

9

evidence that tends to prove the elements of the offense, "even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes." *Id.* (quotations omitted). Such evidence must be linked in "point of time or circumstances" so that "evidence of other crimes constitutes part of the res gestae," which the supreme court defined as "the events at issue, or other events contemporaneous with them." *Id*. at 425 & n.2 (quotation omitted). The supreme court has "repeatedly affirmed the admission of immediate-episode evidence when there is a close causal and temporal connection between the prior bad act and the charged crime." *Id*.

Here, the evidence included that contemporaneously with the charged offense, appellant was casing other houses in the neighborhood of the burglary. This evidence was relevant to show motive and intent to commit the attempted burglary and provided evidence that tended to prove that the items appellant carried were burglary tools. The causal and temporal connections to the charged crimes in this case were very close. The district court did not abuse its discretion by admitting this evidence. Further, under either the harmless-error or plain-error standards, the evidence would have not affected the trial outcome.

**Affirmed.**