**STATE of Minnesota, Respondent,**

v.

**Christopher James JOHNSON, Appellant.**

**No. A12–1248.**

Court of Appeals of Minnesota.

June 17, 2013.

918

Lori Swanson, Attorney General, St. Paul, MN; and Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by RODENBERG, Presiding Judge; LARKIN, Judge; and HARTEN, Judge.*

## OPINION

RODENBERG, Judge.

On appeal from his conviction of five counts of possessing a pornographic work involving minors, in violation of Minn.Stat. § 617.247, subd. 4(a) (2008), following a trial on stipulated evidence conducted pursuant to Minn. R.Crim. P. 26.01, subd. 4, appellant argues that (1) the evidence discovered as a result of the forensic analysis of his computer hard drive should have been suppressed and (2) the district court failed to exercise its discretion by not considering a downward dispositional departure. We affirm.

## FACTS

In May 2009, a special agent of the Minnesota Bureau of Criminal Apprehension (BCA) obtained and executed a search warrant authorizing the search of appellant Christopher James Johnson's residence for evidence that appellant was involved in the possession and distribution of child pornography. The warrant specifically authorized the seizure of

> [c]omputer systems including, but not limited to: the main computer box, hard drives, monitors, scanners, printers, modems and/or other peripheral devices ... [and d]ata contained on either hard drives or removable media to include: deleted files and e-mail files that may show the receipt, possession, and/or distribution of child pornography; chat line logs that may identify children being enticed online; or data that reveals the distribution of child pornography.

The warrant directed the BCA to "search for the above-described property and things, and to seize said property and things and to retain them in custody subject to court order and according to law." It is undisputed that the warrant was duly issued by a judge based upon probable cause shown in the warrant application.

During execution of the warrant in May 2009, a computer hard drive was seized from appellant's residence. In December 2009, forensic analysis of the data on the hard drive resulted in the discovery of child pornography. Appellant was charged with six counts of possession of child pornography in violation of Minn. Stat. § 617.247, subd. 4(a) (2008).

At an omnibus hearing, appellant moved to suppress the evidence resulting from the December 2009 forensic analysis, argu-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

ing that it amounted to a warrantless search. The district court denied appellant's motion to suppress.

The state and appellant then reached an agreement to submit the matter to the district court for trial on stipulated evidence pursuant to Minn. R.Crim. P. 26.01, subd. 4. The parties also agreed that, if appellant was found guilty, he would be sentenced to an executed 43–month sentence. In exchange, the state dismissed one count of the complaint. Based on the stipulated evidence, the district court found appellant guilty of the remaining five counts of possession of child pornography.

On February 8, 2012, the agent conducting appellant's presentence investigation (PSI) wrote to the district court relating the agent's "initial opinion" that appellant was a "probation prospect." The agent mistakenly described the agreement as "a durational departure to prison" from "an otherwise likely placement on probation." The agent indicated that appellant "[was] gainfully employed, and [was] willing to work on the issues which likely played a role in his accessing child pornography." The agent recommended that the district court continue the sentencing hearing to permit appellant to complete a psychosexual evaluation. In a handwritten note on the agent's letter, the district court directed court administration to reset sentencing to a later date.

On February 24, 2012, the prosecutor wrote to the district court objecting to the agent's request and asking the district court to cancel the psychosexual evaluation and hold appellant to the terms of his sentencing agreement. The district court granted the state's request, stating that it would "honor the terms of the sentencing agreement explicitly adopted by the parties."

The agent completed the PSI, which noted that, while appellant had completed the psychosexual evaluation, no mention would be made of it based on the district court's response to the state's letter. The PSI opined that appellant "may benefit from community supervision in lieu of commitment to prison" but did not elaborate on the basis for this opinion in light of the "already-established agreement of a 43 month commitment to prison." The PSI indicated that the presumptive guidelines sentence for Count 5 of the complaint was a 39–month prison commitment, with a presumptive sentence range of 33 to 47 months.

At the sentencing hearing, appellant's counsel acknowledged that appellant had agreed to a 43–month prison commitment in exchange for the state's dismissal of one felony count, but argued that the agent preparing the PSI "had very strong feelings that my client would be amenable to probation. He'd obviously love any opportunity for departure and to be put on probation in lieu of being sent to prison. We understand the Court's decision, but we'd ask the Court to, to reconsider."

The district court, without further comment, sentenced appellant to 43 months in prison for Count 5, to be served concurrently with lesser sentences for the other four counts of which appellant was convicted. This appeal followed.

## ISSUES

I. Did the district court err in not suppressing the evidence obtained by the forensic analysis of the computer hard drive as the fruit of an unlawful search?

II. Did the district court fail to exercise its discretion by sentencing appellant consistent with the parties' sentencing agreement and within the presumptive guidelines range?

## ANALYSIS

## I.

■ We review a district court's ruling on the constitutionality of a search or seizure de novo. *State v. Anderson,* 733 N.W.2d 128, 136 (Minn.2007). The United States and Minnesota Constitutions protect the right of the people to be free from "unreasonable searches and seizures" of their "persons, papers, and effects" by the government. U.S. Const. amends. IV, XIV; Minn. Const. art. I, § 10; *see Mapp v. Ohio,* 367 U.S. 643, 655–56, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961) (incorporating the Fourth Amendment and the consequences for violating it into the Due Process Clause of the Fourteenth Amendment). Although the Minnesota Constitution may be interpreted to offer greater protection than the Fourth Amendment, the Minnesota Supreme Court has not established a precedent that would provide greater protection than the Fourth Amendment under the present circumstances. *See State v. Askerooth,* 681 N.W.2d 353, 361–63 (Minn.2004) (discussing the circumstances under which Minn. Const. art 1, § 10, provides greater protection than the Fourth Amendment). Therefore, we conduct our analysis under the Fourth Amendment. *See id.* at 362 (stating that our supreme court "will [not] cavalierly construe our constitution more expansively than the United States Supreme Court has construed the federal constitution" (alteration in original) (quotation omitted)).

■ "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness'...." *Brigham City v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006). Under the Fourth Amendment, subject only to a few exceptions, a search or seizure is unreasonable absent a valid warrant. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Hanley,* 363 N.W.2d 735, 738 (Minn.1985). A "search" within the meaning of the Fourth Amendment occurs upon an official's invasion of a person's reasonable expectation of privacy. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). A reasonable expectation of privacy exists as to areas and objects in which the person invoking the Fourth Amendment has a subjective expectation of privacy that society is prepared to recognize as reasonable. *In re Welfare of B.R.K.,* 658 N.W.2d 565, 571 (Minn.2003). A "seizure" of property within the meaning of the Fourth Amendment occurs upon an official's meaningful interference with a person's possessory interest in the property. *Jacobsen,* 466 U.S. at 113, 104 S.Ct. at 1656.

■ Here, appellant claims that he had a reasonable expectation of privacy in the contents of his computer. We recently held that "a person has the same reasonable expectation of privacy in the concealed digital contents of a cellular telephone as a person has in the concealed physical contents of a container." *State v. Barajas,* 817 N.W.2d 204, 216–17 (Minn. App.2012), *review denied* (Minn. Oct. 16, 2012). Like the cellular phone in *Barajas,* the computer in this case was capable of creating and storing "substantial amounts" of "private data that the owner does not intend for others to view" and the access of which requires a person to take affirmative action such as "mak[ing] deliberate key strikes, and navigat[ing] the [device's] internal memory." *Id.* at 216. Thus, the reasoning in *Barajas* applies with equal force to the computer hard drive at issue in this case, and we evaluate this case under the caselaw addressing the search of containers whose physical contents are shielded from plain view.

■ But identifying the caselaw that governs here does not end our inquiry because the reasonableness of a person's expectation of privacy is "appraised on the basis of the facts as they existed at the time [the] invasion occurred." *Jacobsen,* 466 U.S. at 115, 104 S.Ct. at 1657. Unlike the cellular phone in *Barajas,* the computer in this case was seized during the execution of a valid warrant that authorized a search for the very data revealed by the later forensic analysis. Thus, the question presented here is whether appellant retained a reasonable expectation of privacy in the contents of a hard drive after the drive and data were seized pursuant to a search warrant authorizing a seizure of that drive and search of its contents.

The United States Supreme Court has addressed "whether an individual has a legitimate expectation of privacy in the contents of a previously lawfully searched container" and has stated that

> [i]t is obvious that the privacy interest in the contents of a container diminishes with respect to a container that law enforcement authorities have already lawfully opened and found to contain [contraband].... The simple act of resealing the container ... does not operate to revive or restore the lawfully invaded privacy rights.

*Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983). The *Andreas* Court went on to state that "the subsequent reopening of the container is not a 'search' within the intendment of the Fourth Amendment" and that "absent a substantial likelihood that the contents have been changed, there is no legitimate expectation of privacy in the contents of a container previously opened under lawful authority." *Id.* at 772–73, 103 S.Ct. at 3324–25.

In *Jacobsen,* the Supreme Court stated that, when a person's reasonable expectation of privacy in the contents of a container has already been "frustrated," the once-private information is no longer private, and "the Fourth Amendment does not prohibit governmental use of the now nonprivate information." 466 U.S. at 117, 126, 104 S.Ct. at 1658–59, 1663 (addressing governmental examination of the contents of a package after a private party who reported its findings to the government violated the reasonable expectation of privacy). However, the government is constrained by the extent of the frustration, and "if the authorities use information with respect to which the expectation of privacy has not already been frustrated," they "presumptively violate the Fourth Amendment if they act without a warrant." *Id.* at 117–18, 104 S.Ct. at 1658–59; *cf. United States v. Carey,* 172 F.3d 1268, 1270, 1276 (10th Cir.1999) (suppressing evidence obtained by search of a hard drive for child pornography where the warrant authorized the search for drug-trafficking evidence).

The Eighth Circuit has held that, because "[a] search warrant authorizing the search of defined premises also authorizes the search of containers found on that premises which reasonably might conceal items listed in the warrant," officers who were authorized to open a locked safe to search it for weapons and who moved it to the police station prior to opening it "did not need a second warrant to complete the search of the safe at the police station later." *United States v. Johnson,* 709 F.2d 515, 516 (8th Cir.1983); *cf. United States v. Horn,* 187 F.3d 781, 788 (8th Cir.1999) (holding that the seizure of video tapes for later off-site review did not exceed the scope of a warrant); *State v. Soua Thao Yang,* 352 N.W.2d 127, 129 (Minn.App. 1984) ("Once [a] letter is validly seized pursuant to [a] first warrant, requiring a second warrant before it could be translat-

ed would be imposing a pro forma requirement which would serve no purpose."). The Eighth Circuit has also stated that, as a practical matter, off-site analysis of seized digital evidence is often necessary because an onsite search for relevant data would take a significant amount of time and impose a tremendous burden on an individual's privacy. *United States v. Summage,* 481 F.3d 1075, 1079 (8th Cir. 2007).

■ The rule we discern from these cases is that once the government lawfully seizes a container during the execution of a warrant authorizing the search of the container for particularly identified evidence, the owner's expectation of privacy in that evidence is "frustrated." *See Jacobsen,* 466 U.S. at 117–18, 126, 104 S.Ct. at 1658–59, 1663 (stating that once the expectation is frustrated, subsequent violations of equal scope are not prohibited); *Johnson,* 709 F.2d at 516 (stating that officers do not need a second warrant to open a lawfully seized safe off-site). Therefore, "the subsequent [ ]opening of the container [to look for that evidence] is not a 'search' within the intendment of the Fourth Amendment," absent special circumstances, such as a substantial likelihood that the individual has had an opportunity to change contents of the container, or the container is searched for evidence other than that contemplated by the warrant. *Andreas,* 463 U.S. at 772, 103 S.Ct. at 3324–25 (stating that a subsequent opening of the container is not a search unless there is a substantial likelihood that its contents were changed by the suspect); *see also Jacobsen,* 466 U.S. at 117–18, 104 S.Ct. at 1658–59; *Carey,* 172 F.3d at 1270, 1276.

■ Here, BCA agents lawfully seized appellant's computer hard drive during the execution of a warrant authorizing a search for specifically identified digital data. The hard drive was effectively a "container" of that data. *See Barajas,* 817 N.W.2d at 216–17. The seizure of the "container" and its contents was specifically authorized by the warrant. Therefore, the execution of the warrant "frustrated" and terminated appellant's expectation of privacy in the hard drive and the digital contents identified in the warrant. The agents were authorized to analyze the hard drive to determine whether it contained that data. *See Jacobsen,* 466 U.S. at 117–18, 126, 104 S.Ct. at 1658–59, 1663; *Johnson,* 709 F.2d 515, 516. The agents were also authorized to remove the hard drive to another location before examining its digital contents. *See Johnson,* 709 F.2d at 515, 516; *see also United States v. Evers,* 669 F.3d 645, 652 (6th Cir.2012) (discussing federal cases addressing search warrants authorizing seizure of computer equipment and concluding that a second warrant is not required when the evidence obtained from the computer is within the scope of the "probable cause articulated in the original warrant"). Because there is nothing to indicate a substantial likelihood that appellant altered the digital contents of the hard drive between its seizure and the forensic analysis, and because the forensic analysis was limited to locating the type of data the seizure of which was authorized by the warrant, appellant's expectation of privacy was not revived. *See Andreas,* 463 U.S. at 772–73, 103 S.Ct. at 3324–25. Thus, while the forensic analysis some months after the physical seizure of the hard drive may have involved some "searching" of the hard drive, that forensic analysis did not amount to a second "search" within the meaning of the Fourth Amendment. *See id.* at 772, 103 S.Ct. at 3324.

Appellant advances three specific arguments as to why the results of the forensic analysis should have been suppressed.

Appellant first argues that the forensic analysis of the hard drive exceeded the scope of the warrant because the warrant did not authorize a search of the computer hard drive. In this, appellant is simply incorrect. The warrant explicitly authorized a search for specific "[d]ata contained on ... hard drives" related to the possession or distribution of child pornography. As discussed, the hard drive was effectively a "container" of such digital evidence, and law enforcement was explicitly authorized by the warrant to search for such digital evidence contained on the hard drive. *See Johnson,* 709 F.2d 515, 516; *Barajas,* 817 N.W.2d at 216–17.

Appellant next argues that the forensic analysis constitutes a subsequent search conducted under the auspices of the same warrant, which violates the rule that a search warrant cannot be executed more than once. *See generally State v. Gomez,* 392 N.W.2d 308, 309 (Minn.App.1986) (announcing that rule). However, and as discussed, the forensic analysis of the hard drive was not a second Fourth Amendment "search," and therefore it did not require a separate warrant. *Gomez* is inapposite.

Finally, appellant argues that the forensic analysis of the hard drive violated Minn.Stat. § 626.15(a) (2008), which provides that "a search warrant must be executed and returned to the court which issued it within ten days after its date."[1] But the forensic analysis was not a second search within the meaning of the Fourth Amendment where the hard drive had been validly seized pursuant to a search warrant issued on probable cause. The subsequent forensic analysis therefore did not require a warrant and was not governed by section 626.15(a). The district

court did not err in denying appellant's motion to suppress.

**II**

■ Appellant contends that the district court abused its discretion by not considering a downward dispositional departure at sentencing. The sentence that appellant is challenging is a severity level G offense on the sex offender guidelines grid, and appellant had a criminal history score of four at the time of sentencing. The presumptive guidelines sentence is a term of commitment ranging from 33 to 47 months imprisonment. Minn. Sent. Guidelines IV (2008). Appellant's 43–month prison sentence is within the range.

■ A district court must impose the presumptive guidelines sentence absent "identifiable, substantial, and compelling circumstances" justifying departure. Minn. Sent. Guidelines II.D (2008). Substantial and compelling circumstances are those which "make the facts of a particular case different from a typical case." *State v. Peake,* 366 N.W.2d 299, 301 (Minn.1985). We will affirm the imposition of a presumptive guidelines sentence when "the record shows [that] the sentencing court carefully evaluated all the testimony and information presented before making a determination." *State v. Van Ruler,* 378 N.W.2d 77, 81 (Minn.App.1985). However, the district court is not required to explain its reasons for imposing a presumptive sentence. *Id.* at 80. Only the "rare case" will merit reversal based on the district court's refusal to depart. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981). When the record contains evidence of factors supporting departure, which could have been, but were not, considered by the district court, we may remand for consider-

---

1. The officer to whom the search warrant was issued and directed filed a "Receipt, Inventory and Return" within ten days of the issu-

ance of the warrant identifying the items seized, including appellant's hard drive.

ation of those factors. *State v. Curtiss,* 353 N.W.2d 262, 264 (Minn.App.1984).

Here, there was no evidence or testimony before the district court establishing compelling circumstances for a downward dispositional departure. Indeed, appellant did not file a written motion with the district court requesting departure.

In his February 8, 2012 letter, the agent stated that it was his "initial opinion" that appellant was a "probation prospect." However, the letter also stated the agent's understanding that the sentencing agreement called for appellant to "obtain a durational [sic] departure to prison." The agent also speculated that appellant's juvenile history apparently "prompted a commitment to prison to an otherwise likely placement on probation." These statements strongly suggest that the agent incorrectly believed that a prison commitment was a departure from the sentencing guidelines rather than a presumptive guidelines disposition. The PSI itself only opined, without elaboration, that appellant "may benefit from community supervision in lieu of commitment to prison." At the sentencing hearing, appellant neither argued that he was amenable to probation nor presented any additional evidence or argument as to why a downward dispositional departure would be appropriate.

A proceeding under Minn. R. 26.01, subd. 4, requires a defendant to waive constitutional rights. *State v. Prax,* 686 N.W.2d 45, 49 (Minn.App.2004). Following conviction, "withdraw[al] from the agreement to utilize the [*State v.*] *Lothenbach* [296 N.W.2d 854 (Minn.1980)] procedure, [requires] the defendant [to] establish that the agreement was not made knowingly and voluntarily." *Id.* Appellant did not seek to withdraw from the earlier agreement, which called for dismissal of one felony count and a stipulated-evidence trial. At the time of the sentencing hearing, appellant had already received the benefit of the bargained-for dismissal of an additional felony count. Had appellant been convicted of the additional felony count, he could have received a presumptive executed sentence range of 43 to 60 months. Minn. Sent. Guidelines IV (2008). It was incumbent upon appellant, if he wished to withdraw from the agreement, to make a timely motion to that effect. *See Prax,* 686 N.W.2d at 49.

■ The only information in the record suggesting that appellant was amenable to probation was the statement in the probation agent's February 8, 2012 letter that appellant was gainfully employed and had professed a willingness to "work on [the] issues" that prompted him to offend. These facts by themselves do not rise to the level of identifiable, substantial, and compelling circumstances different from those that would be present in a typical case. *See Peake,* 366 N.W.2d at 301; Minn. Sent. Guidelines II.D; *cf. id.* at II. D.2.a (providing a nonexclusive list of mitigating factors that might justify a downward dispositional departure). Nothing in the record suggests that the district court was unaware of these facts. That the district court initially continued the sentencing hearing based on the February 8, 2012 letter suggests that it was aware of them.

■ The district court was not required to abide by the parties' sentencing agreement and sentence appellant to the presumptive guidelines sentence. *State v. Johnson,* 689 N.W.2d 247, 252–53 (Minn. App.2004), *review denied* (Minn. Jan. 20, 2005). But nothing prevented the district court from exercising its discretion to sentence appellant in accordance with the parties' agreement. The district court was not required to state its reasons for not departing on the record. *See Van Ruler,* 378 N.W.2d at 80. The district

court's imposition of a presumptive sentence seems to us to have been particularly warranted where the parties had consummated an agreement as a result of which appellant had successfully avoided the prospect of an even longer prison commitment.

This is not one of the "rare cases" justifying reversal of the imposition of a presumptive sentence under the guidelines. *Kindem,* 313 N.W.2d at 7.

## DECISION

Appellant did not have a reasonable expectation of privacy in the specific data on his hard drive after the drive was seized during the execution of a warrant authorizing a search for that data. Thus, the subsequent forensic analysis of the hard drive to obtain that data was not a second search within the meaning of the Fourth Amendment. Therefore, the district court did not err in denying appellant's motion to suppress evidence obtained as a result of the forensic analysis.

Where appellant neither moved for a downward dispositional departure nor sought to withdraw from the parties' negotiated agreement, the district court did not fail to exercise its discretion when it imposed the agreed-upon presumptive guidelines sentence after a trial on stipulated evidence and dismissal of an additional felony count. The record suggests no abuse of the district court's discretion in imposing a guidelines sentence.

**Affirmed.**