*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0382**

State of Minnesota,
Respondent,

vs.

Jason Cole Hence,
Appellant.

**Filed February 5, 2024**
**Affirmed**
**Segal, Chief Judge**

Hennepin County District Court
File No. 27-CR-22-11154

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicole Cornale, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Gina D. Schulz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Segal, Chief Judge; Cochran, Judge; and Kirk, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SEGAL**, Chief Judge

In this direct appeal from the judgment of conviction for possession of a firearm by an ineligible person, appellant argues that the district court abused its discretion in denying his motion for a downward dispositional sentencing departure because the district court failed to meaningfully consider whether appellant's youth justified such a departure. We affirm.

**FACTS**

In June 2022, respondent State of Minnesota charged appellant Jason Cole Hence with being an ineligible person in possession of a firearm, possession of a dangerous weapon on school property, and possession of a firearm with no serial number. The complaint alleged as follows. On June 8, 2022, law enforcement received reports of a fight on the property of a school, including multiple reports that an individual involved in the fight had a firearm. The fight broke up before the officers arrived, but the officers were informed that three males, including an individual believed to have a firearm, were being escorted off the property by school staff. Officers approached and detained the three males.

Hence was one of the males and was found to be in possession of a firearm with no serial number. Hence is ineligible to possess a firearm due to a prior adjudication for a crime of violence. Hence gave a statement to law enforcement, explaining that he was just trying to break up the fight.

The parties reached a plea agreement. Pursuant to that agreement, Hence pleaded guilty to being an ineligible person in possession of a firearm and the state dismissed the

two remaining charges.  At the plea hearing, the prosecutor explained that the parties had been through "several rounds of negotiations" and that defense counsel was requesting a "dispositional departure with a significant Workhouse sanction," but the state was "on the fence about making that an official offer."  The state indicated it was waiting for more information from staff who worked with Hence during his time at a juvenile-detention facility and while on juvenile probation.  The prosecutor stated that, depending on the information received, the state "may still end up making it an official offer or supporting a dispositional departure . . . but at this point it's a straight plea."

Prior to sentencing, a probation officer prepared a presentence investigation report (PSI).  As part of the PSI, Hence provided his version of the offense.  Hence shared that on the date of the offense he was attending a graduation ceremony at the school when his brother and his brother's friend tried to get involved in the fight on school property.  Hence told his brother they should leave.  Hence then saw another individual drop a bag that Hence believed may have a firearm in it, so he picked up the bag because he "didn't want the dude to start shooting."  He didn't intend to keep the gun but was arrested as he was leaving the school property.  The PSI ultimately recommended that the district court sentence Hence to the presumptive sentence of 60 months in prison.

At the sentencing hearing, the state requested that Hence be given a presumptive sentence in accordance with the recommendation from the PSI. Defense counsel asked the district court "to consider using all th[e] tools [it has] to depart from the presumptive sentence of—of prison and to give [Hence] an opportunity with appropriate punishment

3

here to move forward still in a positive direction before he has to take that trip out to—to prison." In support of the request for a downward departure, defense counsel argued:

> I keep coming back to two things, Your Honor: Number one, he's 18. He was incarcerated at Red Wing for a substantial period of time. To send him off and have him waste the next three years staring at the walls before he's had an opportunity to try to get this going in the right direction just doesn't make a lot of sense. This Court has ample tools available to it to, sort of, rein him in and focus him on what needs to be focused on, whether that be [electronic home monitoring], whether that be a huge chunk of Workhouse time. There are options. We have an entire, you know, division of probation that's designed and—and—as a program to work with young folks like him as an adult. The options are there.
>
> And what—the second thing I keep coming back to is the facts in the case. As both the prosecutor and I told you in October, he's not the person seen with the firearm. It's the guy in the teal that the police are looking for that the administ[rator] or teacher, whoever it was from the school, said she saw that. His involvement is going away from the school, getting the people and the firearm out of there, and they're crossing the street and moving away from the school when this is—when this is over with. It's consistent with what he said, and there's—there's nothing else to—there's nothing else about this that—that we even have in our—in our collective knowledge here.

The district court sentenced Hence to 48 months in prison. The district court "note[d] that this is a durational departure" and explained that it was imposing a downward durational departure "in part based on [Hence's] acceptance of responsibility and the fact that this [involved] less onerous facts than that which is normally seen by the Court." But the district court further explained: "What concerns me is you just got out of Red Wing. And it doesn't matter whether or not they give you good services; you're an adult, you've got [to] make choices. The last choice you want to make is picking up a gun."

4

**DECISION**

Minnesota law recognizes two kinds of sentencing departures: durational and dispositional. Minn. Sent'g Guidelines 2.D.1 (Supp. 2021). The district court imposes a downward durational departure when it pronounces a shorter sentence than prescribed by the presumptive sentencing range established in the sentencing guidelines. *State v. Solberg*, 882 N.W.2d 618, 623-24 (Minn. 2016). The district court imposes a downward dispositional departure when the sentencing guidelines call for an executed prison term, but the district court instead stays a prison sentence and places an offender on probation. *State v. Trog*, 323 N.W.2d 28, 30-31 (Minn. 1982).

Here, the presumptive sentence for being an ineligible person in possession of a firearm was an executed sentence of 60 months in prison. *See* Minn. Stat. § 609.11, subd. 5(b) (2020); Minn. Sent'g Guidelines 2.E.2.b (Supp. 2021). The district court imposed a sentence of 48 months in prison. The district court therefore sentenced Hence to the presumptive disposition—an executed prison term—but imposed a downward durational departure. Hence now challenges the district court's denial of his motion for a downward dispositional departure.

The district court must impose the presumptive sentence unless "identifiable, substantial, and compelling circumstances" justify a downward departure. *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013) (quotation omitted), *rev. denied* (Minn. Sept. 17, 2013). The district court has "broad discretion" in sentencing, and an appellate court will only reverse a district court's refusal to depart in a "rare case." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). This court generally will not disturb a district court's denial

of a motion for a downward dispositional departure when "the record shows that the sentencing court carefully evaluated all the testimony and information presented" before imposing a sentence. *Johnson*, 831 N.W.2d at 925 (quotation omitted).

Hence argues that his youth is a substantial and compelling reason to support a dispositional departure because he "was just barely a legal adult when he committed the offense at issue." As Hence notes, the sentencing guidelines provide "a nonexclusive list of factors that may be used as reasons for departure." Minn. Sent'g Guidelines 2.D.3 (Supp. 2021). The mitigating factors include, as relevant here, that "[t]he offender is particularly amenable to probation" and "[o]ther substantial grounds exist that tend to excuse or mitigate the offender's culpability, although not amounting to a defense." Minn. Sent'g Guidelines 2.D.3.a(5), (7). Minnesota courts have explicitly recognized that age is a relevant factor when considering whether an offender is particularly amenable to probation, *Trog*, 323 N.W.2d at 31, and have considered an offender's youth as a mitigating factor when evaluating whether a sentence is commensurate with the offender's culpability, *State v. McLaughlin*, 725 N.W.2d 703, 715-16 (Minn. 2007). We also acknowledge the social-science studies and cases from foreign jurisdictions cited by Hence in his appellate brief about brain development in young adults. But Hence's arguments nevertheless fall short of establishing an abuse of discretion by the district court.

The record here supports that the district court "carefully evaluated all the testimony and information presented" before imposing a sentence. *Johnson*, 831 N.W.2d at 925 (quotation omitted). Moreover, the record does not support a determination that this is one of those "rare case[s]" where a reversal of the district court's denial of a dispositional

6

departure can be justified. *Kindem*, 313 N.W.2d at 7. The PSI, which the district court reviewed prior to imposing a sentence, stated that "[a]menability to probation appears poor." The PSI noted that during the pendency of this matter Hence was placed on electronic-home monitoring, but cut his bracelet and was eventually arrested with his co-defendant—with whom he was not supposed to have contact—after the two were discovered in possession of a vehicle that was stolen during an armed carjacking. The PSI detailed Hence's history of involvement with juvenile court, including his recent placement at Red Wing, and opined that Hence's "juvenile history suggests he is not deterred by the idea of jail time or other court sanctions." The PSI noted Hence's "young age," but ultimately recommended the imposition of a presumptive sentence.

The district court provided only a brief explanation of its decision to impose a presumptive disposition, but did note that its primary concern was that Hence had just gotten out of his juvenile placement at Red Wing and, nevertheless, made the choice to "pick[] up a gun." The district court thus considered Hence's amenability to probation, one of the key factors in considering a dispositional departure. *See Solberg*, 882 N.W.2d at 623 ("A dispositional departure typically focuses on characteristics of the defendant that show whether the defendant is particularly suitable for individualized treatment in a probationary setting." (quotation omitted)). In addition, the district court imposed a downward durational departure based on the determination that the offense involved "less onerous facts" and Hence's acceptance of responsibility, which further indicates that the district court thoroughly considered the arguments advanced in support of a more lenient sentence than the presumptive 60-month executed sentence.

Based on this record, where the district court considered the evidence and arguments presented, the district court's disposition was consistent with the PSI recommendation, and the evidence does not compel a determination that Hence is particularly amenable to probation, we discern no abuse of discretion by the district court in denying Hence's motion for a downward dispositional departure.

**Affirmed.**