*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0552**

State of Minnesota,
Respondent,

vs.

Shante Cheriece Davis,
Appellant.

**Filed May 13, 2024**
**Affirmed**
**Worke, Judge**

Hennepin County District Court
File No. 27-CR-20-3375

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam Petras, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Charles F. Clippert, St. Paul, Minnesota (for appellant)

Considered and decided by Gaïtas, Presiding Judge; Worke, Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**WORKE**, Judge

Appellant challenges her conviction for aiding an offender after the fact, arguing that the evidence was insufficient to prove beyond a reasonable doubt that she intended to

assist her husband by providing an alibi, and the district court abused its discretion by denying her motion for a durational departure.  We affirm.

## FACTS

On December 30, 2019, Cedric Berry asked an individual to rent a U-Haul for him. The next morning, Cedric Berry's wife, appellant Shante Cheriece Davis, drove Cedric Berry to pick up the U-Haul.  Later that day, M.B., a realtor, was lured to a house for a showing.  M.B. entered the house around 3:00 p.m.  Shortly thereafter, Cedric Berry and Davis's brother, Berry Davis, arrived in the U-Haul and kidnapped M.B.  Cedric Berry and Berry Davis interrogated M.B. regarding the whereabouts of her partner, J.M.-M.

Just before 5:40 p.m., a gunman used M.B.'s keys to enter M.B.'s mother's house. The gunman shot J.M.-M. and fled.  J.M.-M. survived his injuries.  At 6:37 p.m., a ShotSpotter alerted to gunshots in an alley.  Officers found M.B. in the alley.  She died from multiple gunshot wounds.

On January 2, 2020, police arrested Cedric Berry at a hotel where he was staying with Davis.  The hotel room was searched.  Davis's cell phone and laptop were seized along with other items.  On January 5, 2020, Davis went to the police department to retrieve her property.  Officers asked Davis if she was willing to talk, and she agreed.

Officers asked Davis what she and Cedric Berry did on New Year's Eve.  Davis stated that she and a friend went to a grocery store and ended up having dinner and drinks. Officers asked Davis if Cedric Berry was with her.  She replied: "[H]e, came there.  Yup, he was there."

Officers told Davis that they needed to "figure out exactly where [Cedric Berry] was [when] this [offense] happened." Davis stated that she saw Cedric Berry not that long after she left the grocery store. She stated that Cedric Berry met her at her friend's house around "5 or . . . 6ish." Davis stated that Cedric Berry did not leave her friend's house until around 10:00 p.m.

The same day, Cedric Berry and Davis had a jail phone call that was recorded. Davis told Cedric Berry that officers questioned her. She stated: "[H]e was try[ing to] like get information out of me, like where you was at. I'm like, man, I seen my husband on New Year's Eve, or whatever." Davis told Cedric Berry that officers informed her that he was going to be formally charged the next day. She stated: "Then he like . . . questions, like does he just hang out with . . . Berry Davis? I'm like, what? I'm like, man, he . . . hangs out with a lot of people . . . or whatever. Who he was with that night, I don't know, but I know for sure my husband was with me."

During their investigation, officers reviewed cell-site-tower information and surveillance video that revealed that Davis was not with Cedric Berry on December 31, 2019, between 5:00 p.m. and approximately 10:00 p.m., as she asserted during her January 5 interview.

Surveillance video from a grocery store showed Davis entering the store at 5:39 p.m., and leaving the store at 6:03 p.m., but Cedric Berry was not with her. Davis's phone records showed that she repeatedly attempted to contact Cedric Berry around the same time frame—between 5:25 p.m. and 7:57 p.m. Video surveillance then showed Davis meeting up with Cedric Berry and Berry Davis at approximately 9:30 p.m. at the same

3

location where the U-Haul was picked up and dropped off. This contact was corroborated by cell-site-tower data.

On February 6, 2020, respondent State of Minnesota charged Davis with aiding an offender after the fact. The district court ranked the offense at a severity-level five.

On August 1, 2022, Davis agreed to a stipulated-facts-and-evidence proceeding, under Minn. R. Crim. P. 26.01, subd. 3. The evidence included, among other things, cell-phone data, surveillance videos, Davis's January 5 interview, and the January 5 jail call.

The district court found Davis guilty of aiding an offender after the fact. The district court concluded that Davis intentionally aided Cedric Berry "by providing a false, albeit weak, alibi to police and by providing other false and misleading information." The district court based this conclusion on the fact that the "specific information" Davis provided to police was intentionally misleading, not because of a failed memory, but because she intended to provide an alibi.

Davis moved for a durational departure, from a felony to a gross misdemeanor. She argued that her conduct was significantly less serious than that typically involved in the offense because she was not at the scene of the crime, did not provide an escape, did not clean the scene, did not participate in planning, and did not provide a weapon. She argued that most important was the fact that when the district court assigned the severity level, it concluded that her "feeble attempt at an alibi did not meet a level of 'severe gravity.'"

The district court denied Davis a durational departure, stating:

> The whole point of fixing [the unranked offense] at a severity [level] 5 was this reflects the seriousness of this type of aiding an offender, and, accordingly, I think it's illogical to move off of that . . . . Looking at it, as I said, this is lying to the police in the context of a homicide and attempted homicide investigation, which is extremely serious.

The district court imposed the presumptive sentence of 18 months in prison, stayed for two years. This appeal followed.

## DECISION

### *Sufficiency of the evidence*

Davis had a stipulated-facts-and-evidence trial under Minn. R. Crim. P. 26.01, subd. 3. The rule permits Davis to raise issues on appeal as from any trial to the court. *See State v. Riley*, 667 N.W.2d 153, 158 (Minn. App. 2003), *rev. denied* (Minn. Oct. 21, 2003).

Davis argues that the evidence is insufficient to sustain her conviction. Specifically, she claims that the state failed to prove that she acted with intent to aid Cedric Berry. The element of intent is generally proved circumstantially, by drawing inferences from the defendant's words and actions considering the totality of the circumstances. *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997). "Circumstantial evidence is entitled to the same weight as direct evidence; however, if a conviction is based on circumstantial evidence, a higher level of scrutiny is warranted." *Bernhardt v. State*, 684 N.W.2d 465, 477 (Minn. 2004).

In reviewing the sufficiency of circumstantial evidence, we first identify the circumstances proved by the state, giving deference to the fact-finder's "acceptance of the [s]tate's evidence and its rejection of any evidence in the record that is inconsistent with

the circumstances proved by the [s]tate." *Loving v. State*, 891 N.W.2d 638, 643 (Minn. 2017). Second, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt." *Id.* (quotation omitted). At this stage, we no longer defer to the fact-finder; rather, we engage in an independent examination of the reasonableness of the inferences. *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). We will uphold a conviction when the circumstantial evidence forms "a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). We will reverse if there is any other reasonable inference other than that of guilt. *Loving*, 891 N.W.2d at 643.

"Whoever intentionally aids another person whom the actor knows or has reason to know has committed a criminal act, by . . . providing false or misleading information about that crime, . . . is an accomplice after the fact." Minn. Stat. § 609.495, subd. 3 (2018). To sustain Davis's conviction, the state had to prove that (1) Cedric Berry committed kidnapping, murder, or attempted murder; (2) Davis knew or had reason to know that Cedric Berry committed the crime(s); (3) Davis provided false or misleading information about the crime(s); and (4) Davis acted with intent to aid Cedric Berry. *See id.* Davis argues only that the evidence is insufficient to show that she acted with intent to aid Cedric Berry. But the evidence is sufficient to show that Davis acted with intent to aid her husband.

The circumstances proved by the state stemmed from the following statements made by Davis. Davis told officers that Cedric Berry met her on December 31, 2019, around "5 or . . . 6ish." Davis stated that Cedric Berry stayed with her at the residence for several hours before leaving "after, like, 10." Shortly after the interview, Davis and Cedric Berry talked on the jail phone. Davis told Cedric Berry that when officers asked about their activity on December 31, 2019, she told them: "I seen my husband on New Year's Eve, or whatever." Davis told Cedric Berry that when asked with whom Cedric Berry hangs out, she told officers: "He hangs out with a lotta people . . . . Who he was with that night, I don't know, but I know for sure, my husband was with me."

Officers' investigation revealed that Davis was not with Cedric Berry during the time frame she provided. Video surveillance showed Davis without Cedric Berry during a time when she claimed that they were together. Davis repeatedly attempted to contact Cedric Berry, including phone calls placed between 5:55 p.m. and 7:57 p.m. when Davis stated that Cedric Berry was with her. Davis and Cedric Berry were then together from about 9:30 p.m. to 10:00 p.m. at the location where Cedric Berry returned the rented U-Haul truck.

Davis lied to or misled officers regarding Cedric Berry's whereabouts on December 31, 2019. Davis knew that Cedric Berry was not with her between approximately 5:00 p.m. and 10:00 p.m. on December 31, 2019. There is no reasonable inference that she would intentionally lie about his whereabouts other than she was intending to aid Cedric Berry by attempting to provide him with an alibi.

7

Davis argues that her recollection did not comport with the investigation because she was under stress and strain. She claims that she answered to the best of her ability and that her statement was immaterial. But a stress-and-strain theory may explain a temporary lapse in memory, not necessarily cause the generation of a false memory. Davis fails to show that this stress-and-strain theory is a reasonable inference other than that of guilt.

And the statute requires the state to prove that Davis provided false or misleading information. The state was not required to prove that Davis's false or misleading information was effective. The totality of the circumstances shows that Davis intentionally aided Cedric Berry after he committed kidnapping, murder, and attempted murder by lying to the police about his whereabouts during the offenses.

***Sentence***

Davis also argues that the district court abused its discretion by denying her request for a downward durational departure. A district court has great discretion in its sentencing decision and this court will reverse only when the district court abused that discretion. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014).

Here, the district court imposed the presumptive sentence. The Minnesota Sentencing Guidelines establish presumptive sentences for felony offenses. Minn. Stat. § 244.09, subd. 5 (2022). A guidelines sentence is presumed to be appropriate. Minn. Sent'g Guidelines 2.D.1 (2022). We will affirm a presumptive sentence when the record shows that the district court "carefully evaluated all the testimony and information presented before making a determination." *State v Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013) (quotation omitted), *rev. denied* (Minn. Sept. 17, 2013).

8

A district court must impose a presumptive guidelines sentence absent "identifiable, substantial, and compelling circumstances" that justify a departure. Minn. Sent'g Guidelines 2.D.1 (2022); *State v. Pegel*, 795 N.W.2d 251, 253 (Minn. App. 2011). Substantial and compelling circumstances supporting a downward durational departure show that a defendant's conduct in committing the crime was significantly less serious than that typically involved in the commission of the crime. *State v. Abrahamson*, 758 N.W.2d 332, 337-38 (Minn. App. 2008), *rev. denied* (Minn. Mar. 31, 2009). Accordingly, a durational departure is based on factors relevant to the seriousness of the offense, not the characteristics of the offender. *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016).

Here, the district court considered Davis's request but determined that it considered the severity of the offense when ranking it at a level five. The district court also noted that Davis's conduct was "extremely serious."

Davis argues that the district court should have considered other factors. For example, Davis claims that she did not impede the investigation, her attempt at establishing an alibi was feeble, the alibi was bogus, and she did not go to the police intending to provide a statement. The district court carefully considered Davis's request but determined that "lying to the police in the context of a homicide and attempted homicide investigation . . . is extremely serious." Davis's conduct is less serious than Cedric Berry's and Berry Davis's. But Davis was not charged with murder, attempted murder, and kidnapping. Davis was convicted of aiding Cedric Berry after he committed a kidnapping, a premeditated murder, and a premeditated attempted murder. Her conduct of providing

9

false and misleading information fits within the statutory language of the offense. The district court did not abuse its discretion by denying Davis a durational departure.

**Affirmed.**